Mr. Justice James
delivered the opinion of the Court:
The question in this case is whether a certain alleged nuncupative will shall be admitted to probate. The heirs of the alleged testator filed in the Orphans’ Court a petition contesting its validity, and the proceeding appears to have been intended to be plenary; but this petition and the order of the court refusing to admit the will are the only facts disclosed by the printed record. We are compelled to make out the case partly by inference.
The subject of nuncupative wills is regulated by sections 19 and 20 of the statute of 29 Chas. II, ch. 3. Section 19-provides that: “ No nuncupative will shall be good, where the estate thereby bequeathed shall exceed the value of A30, that is not proven by the oaths of three witnesses (at the least) that were present at the making thereof; nor unless it be proved that testator, at the time of pronouncing the same, did bid the persons present, or some of them, to bear witness that such was his will, or to that effect; nor unless such nuncupative will were made in the time of the-last sickness of the deceased, and in the house of his or their habitation or dwelling, or where he or she have been a resident for the space of ten days or more next before the making of such will.”
Section 20 provides: “That after six months after the speaking of the pretended testamentary words, no testimony shall be received to prove any will nuncupative, except the said testimony, or the substance thereof, were committed to writing within six days after the making, of said will.”
The only testimony that appears by this record to have been produced at the hearing in the Orphans’ Court was the following paper:
*16 “Bushrod W. Askins departed this life on the 18th day of April, 1890, aged 85 years, at the residence of Mrs. Louisa Shoemaker, in the County of Washington, District of Columbia; that several times before his death he spoke about making a will, and stated how he wanted it written. He said he devised all his property, which was personal, to those he knew best, viz: William Shoemaker, Harriet Shoemaker, Edith Shoemaker and Mary Balanger, to be equally divided between them, and William Shoemaker to be executor of his estate; he was at the time of speaking the above words of sound and disposing mind and memory, and every way capable of knowing what he was saying. He stated that he had distant relatives, but as they never came to see him, and appeared to care nothing about him, he would not leave them anything, except Mary Balanger. He was a bachelor, never having been married, and lived in the Shoemaker family for 58 years.
“ Witnesses: William Shoemaker, Harriet Shoemaker, Edith Shoemaker, Mary Balanger, 1024 Congress street; William Jackson; John G. Bohrer, Bethesda; George W. Balanger.”
This paper was filed on April 22, 1890, four days after the death of the alleged testator; the caveat was filed on the 18th of July, 1890; but the case was not heard on the testimony until the 24th of October, 1890, about five days after the lapse of six months after the death of Askins. At that hearing no testimony establishing the fact of a nuncupative will could be received, unless it had been reduced to writing within the time limited by the 20th section of the statute; and it does not appear by any affirmative statement of the record that the proponent of the alleged will either possessed or offered to produce any other testimony so written than the paper above recited. If that writing did not show that all of the conditions necessary to the validity of a nuncupative will had been complied with the proponent could not prove such compliance by testimony which had not been reduced to writing within the prescribed time. The only question, then, which could be considered by the Orphans’ Court was, whether the writing set forth in the record showed the necessary facts. The statute *17 requires proof that at the time of-pronouncing the alleged testamentary words, the testator “ did bid the persons present, or some of them, to bear witness that such was his will,” and proof that such nuncupative will was made “in the time of the last sickness of the deceased;” and neither of these facts is. stated in the writing submitted to the court.
The court therefore had no proof of these necessary facts, and it must be assumed that there was no proof of them which it could at that time receive. The written testimony which it could receive, and did actually admit, was. defective as to another essential matter. The paper before us states that “ several times before his death, he (the deceased) spoke about making a will and stated how he wanted it written.” Instead of showing that he intended to be understood to announce a. will as then and there finally made, this .statement indicates-the contrary, and shows ari intention to make a will in writing-at some other time. In other words, it is shown by the proponent himself that the statements of the deceased did not-constitute the making of a will.
We observe that the judgment of the Orphans’ Court seems-to describe the paper in question as if it was offered as the-written will of the deceased. Although inartificial, this form, appears to have been commonly used in the Maryland practice under this statute. It sufficiently expresses the fact that: alleged announcements of the deceased did not constitute his will.

Decree affirmed.